AUTUMN M. ELLIOTT (Cal. Bar No. 230043)
autumn.elliott@disabilityrightsca.org
SRIVIDYA PANCHALAM (Cal. Bar No. 265398)
sri.panchalam@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
350 South Bixel Street, Suite 290
Los Angeles, CA  90017
Telephone: (213) 213-8000
Fax: (213) 213-8001

AARON J. FISCHER (Cal. Bar No. 247391)
aaron.fischer@disabilityrightsca.org
JULIE WILENSKY (Cal. Bar No. 271765)
julie.wilensky@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
1330 Broadway, Suite 500
Oakland, CA  94612
Telephone: (510) 267-1200
Fax: (510) 267-1201

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES ANTHONY GUERRA, CHRYSTAL, and KARLTON BONTRAGER,<br><br>        Plaintiffs,<br><br>    v.<br><br>WEST LOS ANGELES COLLEGE and LOS ANGELES COMMUNITY COLLEGE DISTRICT,<br><br>        Defendants. | Case No.: 2:16-CV-06796<br><br>**CIVIL RIGHTS COMPLAINT FOR VIOLATIONS OF:**<br>   1. **Title II of the ADA, 42 U.S.C. § 12131 *et seq*.**<br>   2. **Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq*.**<br>   3. **Cal. Gov't Code § 11135**<br>   4. **Cal. Educ. Code § 66270**<br>   5. **Cal. Civ. Code § 51**<br>   6. **Cal. Civ. Code § 54**<br>   7. **Negligence and Negligence *Per Se***<br><br>**JURY TRIAL DEMANDED** |

# INTRODUCTION

1.      Plaintiffs Charles Anthony Guerra, Chrystal (who uses one legal name), and Karlton Bontrager, community college students with mobility disabilities, bring this civil rights action against West Los Angeles College ("WLAC"), a community college in Culver City serving nearly 12,000 students, and the Los Angeles Community College District ("LACCD") (collectively "Defendants"). These students – a United States Army veteran, a woman returning to school after years serving as her mother's primary caregiver, and a part-time library volunteer – are deeply committed to completing their academic program and applying their education to give back to their community.

2.      To attend their classes and participate in student activities and programs on campus, Plaintiffs require transportation assistance. WLAC describes itself as located on a "lushly landscaped hillside." It is designed in such a way that people on campus must traverse sloped and uneven paths to get from the campus entrances and parking lots to classes and student program areas. Students must cross long and in many places uneven terrain to get to classroom buildings, the library, the bookstore, student meeting areas, student service offices, and other campus locations.

3.      After years of operating a Campus Shuttle that prioritized serving people with disabilities who needed transportation assistance to get around campus and access classes and campus services, WLAC and LACCD decided in February 2016 to terminate this service. Defendants told Plaintiffs and others with disabilities they could use an on-call golf cart transport service instead, but that service was also terminated the following month. Since March 2016, despite Plaintiffs' repeated requests for assistance and multiple in-person meetings with Defendants' representatives, Defendants have failed to provide transportation assistance or any alternative meassures necessary to provide Plaintiffs with meaningful access to the educational services and programs offered on the WLAC

campus.

4.     Defendants' failure to provide meaningful access for Plaintiffs to campus services and programs violates Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and California anti-discrimination law. Indeed, the California Community Colleges Chancellor's Office (CCCCO)'s guidelines explicitly describe the provision of on-campus tram services as a method of ensuring equal access on campuses that are large or have difficult terrain, and LACCD's own policy provides that its colleges may provide such transportation services to ensure access for students with disabilities.

5.     Defendants have all but ignored Plaintiffs' requests for help, and Plaintiffs have suffered serious harm as a result. Mr. Guerra and Mr. Bontrager have both fallen and injured themselves while trying to navigate WLAC's inaccessible campus on their own. These falls have been humiliating and traumatic, and in Mr. Guerra's case, resulted in the need for emergency medical care and damage to his physical condition.

6.     Defendants' denial of access to campus services has significantly restricted Plaintiffs' participation in college life and progress towards completing their education. Plaintiffs have been forced to forgo classes, withdraw from classes, or limit coursework to online classes.

7.     Defendants' proposed solutions to this problem have been as insulting as they have been legally inadequate. For example, Defendants proposed that Mr. Bontrager obtain professors' permission to leave classes early or arrive late so he can have more time to get to the next class or student activity – essentially, to participate less in his own education.

8.     Plaintiffs are being forced to delay or forgo educational opportunities, and each day that they persevere by navigating the campus on their own puts them at significant risk of physical and other harm.

9.     Due to Defendants' continued unlawful conduct that will continue to

harm Plaintiffs, Plaintiffs seek declaratory and injunctive relief requiring Defendants to provide transportation assistance that will enable Plaintiffs to meaningfully access Defendants' programs, services, and activities on WLAC's campus. Plaintiffs also seek statutory damages resulting from Defendants' civil rights violations. Plaintiff Guerra additionally seeks actual and compensatory damages resulting from Defendants' civil rights and tort violations.

## JURISDICTION

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. §1367. The Court has jurisdiction to issue declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

## VENUE

11.     Venue is proper in the Central District of California because Defendants reside in the Central District of California within the meaning of U.S.C. § 1391, and a substantial part of the events, acts, and omissions giving rise to the claims occurred in Los Angeles County, in this District.

## PARTIES

**Plaintiffs**

12.     Plaintiff Charles Anthony Guerra is a U.S. Army veteran and a student at WLAC. He has a spinal cord condition that makes him substantially limited in his ability to walk. He currently uses a walker and a foot brace, and his left leg and foot drag when he walks. He is a "qualified person with a disability" and a person with "a disability" within the meaning of all applicable statutes and regulations, including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104, 29 U.S.C. § 705(20)(B), and California Government Code § 12926. He has experienced and continues to experience access barriers in navigating WLAC's campus due to Defendants' ongoing violations.

13.     Plaintiff Chrystal (who uses one legal name) is a student at WLAC.

Chrystal has multiple conditions and impairments that substantially limit her ability to walk. She carries an oxygen tank attached to a wheeled cart with her at all times. She is a "qualified person with a disability" and a person with "a disability" within the meaning of all applicable statutes and regulations, including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104, 29 U.S.C. § 705(20)(B), and California Government Code § 12926. She has experienced and continues to experience access barriers in navigating WLAC's campus due to Defendants' ongoing violations.

14. Plaintiff Karlton Bontrager has a traumatic brain injury and other conditions that substantially limit his ability to walk, including weakness and limited mobility on the left side of his body and balance issues. He is a "qualified person with a disability" and a person with "a disability" within the meaning of all applicable statutes and regulations, including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104, 29 U.S.C. § 705(20)(B), and California Government Code § 12926. He has experienced and continues to experience access barriers in navigating WLAC's campus due to Defendants' ongoing violations.

**Defendants**

15. Defendant WLAC is a public community college located in Culver City, Los Angeles County, California.

16. At all relevant times, WLAC is and has been a public entity within the meaning of Title II of the ADA. 42 U.S.C. § 12131.

17. At all relevant times, WLAC has received and continues to receive federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. § 794.

18. At all relevant times, WLAC has received and continues to receive state financial assistance within the meaning of California Government Code § 11135.

19. Defendant LACCD is the community college district serving the City of Los Angeles, California and some of its neighboring cities. Its offices are

1  located in Los Angeles.

2      20.    At all relevant times, LACCD is and has been a public entity within

3  the meaning of Title II of the ADA. 42 U.S.C. § 12131.

4      21.    At all relevant times, LACCD has received and continues to receive

5  federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C.

6  § 794.

7      22.    At all relevant times, LACCD has received and continues to receive

8  state financial assistance within the meaning of California Government Code §

9  11135.

10      23.    Defendants are sued in their own right and on the basis of the acts of

11  their officials, agents, trustees, and employees.

12  ## FACTS

13      24.    West Los Angeles College is a community college in Culver City,

14  California. It has nearly 12,000 students, the majority of whom are people of color,

15  and the majority of whom are women. WLAC claims on its website that "[a]ll

16  students at West have the opportunity for success." Its mission includes providing

17  "a transformation education experience," to "foster[] a diverse learning community

18  dedicated to student success," and to "enrich[] students with the knowledge and

19  skills needed to earn certificates and degrees . . . ." In addition, "[t]hrough quality

20  instruction and supportive services, the College develops leaders who encourage

21  excellence in others."[1]

22      25.    California's community colleges serve thousands of students with

23  mobility-related disabilities. For example, the California Community Colleges

24  Chancellor's Office's Disabled Student Programs and Services served nearly

25  13,000 "mobility impaired" students in 2012-2013.[2]

26

27      [1] WLAC, About West, at www.wlac.edu/About/index.aspx (accessed Sept. 8, 2016).

28      [2] CCCCO Student Services and Special Programs, Disabled Student Programs and Services (May 2014).

26.     WLAC is part of nine colleges that make up the Los Angeles Community College District ("LACCD"). LACCD is the largest community college district in the United States and one of the largest in the world. Of LACCD's 135,319 students enrolled last year, more than half were below the poverty line and more than 80% were people of color.[3]

27.     LACCD states that its "doors are wide open for a diverse student population eager for skills, knowledge and upward mobility," and that "[m]ore than any other California system of higher education, community colleges offer a first – and a second – chance for anyone who wants to succeed." LACCD's vision is to provide "high quality, accessible, educational opportunities" and to "close[] persistent equity gaps."[4]

## WLAC's Inaccessible Campus

28.     WLAC is geographically sited along a hill, with terrain that is uneven in many places and with slopes, among other barriers to accessibility for people with mobility disabilities.

29.     To go from the parking lots and the general campus area, between certain campus buildings, and between the southeast campus entrance and the general campus area, students must climb stairways or traverse slopes, and travel long distances.

## WLAC's Campus Shuttle Service

30.     Until February 2016, WLAC offered an on-campus shuttle service (the "Campus Shuttle").

31.     The Campus Shuttle service provided multi-seat shuttles, or trams, that were available seven days a week. The Campus Shuttle picked up and dropped

---

[3] LACCD, Fast Facts, at https://www.laccd.edu/Departments/EPIE/Research/Pages/Fast-Facts.aspx (accessed Sept. 8, 2016).
[4] LACCD, About LACCD, at https://www.laccd.edu/about/Pages/default.aspx (accessed Sept. 8, 2016).

off students at locations across the campus, including campus entrances, parking lots, and classroom and other campus buildings.

32.    As described more below, the Campus Shuttle was a critical means for Plaintiffs to reach all areas of campus, including classroom buildings, the library, the bookstore, and WLAC student service offices. It provided Plaintiffs with access to classes and other on-campus programs and services.

33.    Defendants recognized the importance of providing such a service to people with disabilities. The Campus Shuttle map prominently stated that "DISABLED PASSENGERS ARE GIVEN PRIORITY."

34.    Plaintiffs and other people with disabilities could, and regularly did, call the Campus Shuttle service number for "door-to-door" service, and the shuttle would pick them up wherever they were on campus and take them to their destination elsewhere on campus.

**Defendants' Termination of the Campus Shuttle Service**

35.    In February 2016, Defendants discontinued the Campus Shuttle service.

36.    At that time, WLAC provided an alternative transportation service to assist students with disabilities. WLAC posted the following message on its web site: "The shuttle service has been discontinued. Disabled students who need assistance reaching a campus destination may contact the Campus Sheriff for golf cart ride at (310) 287-4314."

37.    Within a few weeks, on March 17, 2016, LACCD issued a memorandum asserting that WLAC and other college could not provide golf cart transportation assistance to people with disabilities. The memorandum stated, among other things, that "There is no court decision requiring any of you to provide ADA shuttle service on campus. Any and all ADA accommodations must be provided only on a case-by-case basis and after a one-on-one interactive with the disabled person."

38.     On March 22, 2016, shortly after the LACCD memorandum was issued, WLAC announced that it would provide neither Campus Shuttle services nor golf cart services. WLAC offered no alternative transportation service for people with disabilities.

39.     Transportation assistance, before Defendants terminated it, was the only adequate affirmative step Defendants took to provide meaningful access for Plaintiffs to the programs, activities, and services at WLAC.

40.     Defendants continue to use the vehicles formerly used for the Campus Shuttle service to provide transportation on campus for visitors during certain campus events.

41.     Defendants are aware that Title II of the ADA, Section 504 of the Rehabilitation Act, and analogous California laws require public community colleges and community college districts, including WLAC and LACCD, to provide meaningful access for people with disabilities to their services, programs, and activities.

42.     Defendants are aware that Federal law requires public entities to operate each service, program, or activity such that the service, program, or activity, "when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a) (regulations implementing Title II); *see also* 34 C.F.R. § 104.22 (regulations implementing Rehabilitation Act). Title II's implementing regulations list methods of achieving program access that include, but are not limited to, "acquisition of equipment" and "use of accessible rolling stock or other conveyances," 28 C.F.R. § 35.130(b)(1), such as trams or other shuttle vehicles.

43.     Defendants are also aware that California state regulations require community colleges to provide "specialized aids, devices and/or students available to students with disabilities . . .  which are in addition to the general services provided to all students" and "enable students to participate in general activities,

programs and classes offered by the college." 5 C.C.R. § 56026. The Chancellor's Office Implementing Guidelines provide that such assistance includes "[m]obility assistance," which "includes on-campus manual or motorized transportation to and from college courses and other related educational activities including the provision of tram services."[5] In particular, the Guidelines acknowledge that "[s]pecialized transportation around campus may be the best method of ensuring equal access on large campuses, or difficult terrain."[6]

44.     Consistent with these federal and state authorities, LACCD's own regulations on serving students with disabilities list "[o]n-campus mobility assistance including manual or motorized transportation to and from classrooms and other related education activities" as a service or accommodation to students with disabilities that individual campuses may provide. A.R. E-100, at http://www.laccd.edu/about/pages/admin-regs.aspx.

45.     As set forth below, Defendants' termination of transportation assistance, and continued refusal to provide transportation assistance or any other assistance to ensure that Plaintiffs have meaningful access to the services offered on the WLAC campus, is unlawful. It was a devastating blow to Plaintiffs. Defendants' actions have caused enormous harm – educationally, physically, and emotionally – to Plaintiffs, and have made the experience of finishing their education a daily nightmare for them.

**Charles Anthony Guerra**

46.     Charles Anthony Guerra is a United States Army veteran. Mr. Guerra received an honorable discharge after experiencing a severe knee injury during his military training.

47.     Mr. Guerra also has a spinal cord condition that has damaged the

---

[5] Chancellor's Office, California Community Colleges Student Services Division, Disabled Student Programs and Services, *2015 Implementing Guidelines for Title 5 DSPS Regulations* 27 (emphasis in original).
[6] *Id.*

nerve to his left leg, and he has undergone surgery to treat this condition. His ability to walk is limited, and he uses a walker and a foot brace. His left leg and foot drag when he walks. It is very difficult for him to walk on slopes, stairs, and uneven terrain, where he is at risk for dangerous falls.

48.     Mr. Guerra is driven to continue to participate civic life, to complete his education, and to find work through which he can give back to his community. Like thousands of veterans, Mr. Guerra has sought to access the educational programs offered by California's community college system.

49.     Mr. Guerra has attended WLAC since 2015. He hopes to use his WLAC education to find work helping people, in particular veterans, recover from alcohol and drug abuse problems. At WLAC, he is working towards a certification as an Alcohol and Drug Abuse Counselor.

50.     Until it was discontinued, Mr. Guerra would use the Campus Shuttle two to four time per day get to classes and other locations on campus. With the shuttle service, Mr. Guerra would have to walk only short and generally flat distances. The service was essential for him to safely navigate campus and participate as a student.

51.     After the Campus Shuttle was discontinued, Mr. Guerra used the golf cart service to get around campus. The service was less timely and less reliable than the shuttle, but it permitted him to safely access his classes and student activities.

52.     After Defendants discontinued both the shuttle and the golf carts, Mr. Guerra experienced substantial difficulty getting around campus. A determined student, he has endured physical pain each day trying to get to his classes and activities on his own.

53.     Since March of 2016, he Mr. Guerra has attempted to obtain reasonable assistance to ensure that he can continue to participate fully as a WLAC student. He communicated his concerns to WLAC's office of Disabled Student

Programs and Services, the Vice President of Administrative Services, and the school's Office of Veterans Affairs. He was repeatedly denied assistance.

54.    Unable to get the assistance that he needs, Mr. Guerra has faced, and continues to face, a denial of access to his education as well as real danger to his physical safety and well-being.

55.    For example, one day in May 2016, Mr. Guerra was walking from the campus bookstore to his scheduled class. The path was on an incline, and he fell while walking uphill. After spending several humiliating moments on the ground while other students walked by, campus staff helped Mr. Guerra get up and get to class. When the Campus Shuttle was in operation, Mr. Guerra had been able to avoid the steep path where he fell.

56.    Mr. Guerra remained determined to continue with his education, despite the dangers he faced without the shuttle service. On June 13, 2016, after enrolling in summer classes, Mr. Guerra again asked for Defendants' help and was told only that he should use Parking Lot A, which was closest to his scheduled class. But Lot A is not accessible to the campus's classrooms, posing significant risks to individuals with mobility disabilities.

57.    The next day, Mr. Guerra parked in Lot A and set off on his own for class. Faced with the long and sloped path of travel, Mr. Guerra fell on his way to class, in full view of other students and campus visitors. He was badly injured, and taken by ambulance to the hospital. The incident left him in significant pain, caused him to miss classes, and was humiliating. Mr. Guerra would not have had to travel the path where he fell had the shuttle service been available.

58.    As a result of the fall, Mr. Guerra's physical conditioned worsened significantly. He also withdraw from his summer classes to deal with the physical and emotional effects of the fall.

59.    Mr. Guerra has continued to request transportation assistance.

60.    On July 6, 2016, Mr. Guerra and the other Plaintiffs, through counsel,

1    sent a letter to WLAC and LACCD, explaining that without on-campus

2    transportation assistance, they and other students with disabilities lacked

3    meaningful access to Defendants' programs, services, and activities at WLAC, and

4    that Defendants were discriminating against them in violation of Title II of the

5    ADA, Section 504 of the Rehabilitation Act, and related California laws. The letter

6    specifically requested that Defendants reinstate the Campus Shuttle service so that

7    Plaintiffs could have meaningful access.

8         61.    Mr. Guerra and the other Plaintiffs again requested the restoration of

9    the Campus Shuttle at a July 18, 2016 meeting with Defendants. Defendants denied

10   the request and offered no viable alternative.

11        62.    On August 18, 2016, Mr. Guerra attended an individual "ADA

12   Interactive Meeting" at the suggestion of Defendants. Ironically, Defendants

13   demanded that the meeting occur in the Student Services Building, which is

14   inaccessible to Mr. Guerra without transportation assistance, and they denied Mr.

15   Guerra's request to move the meeting to a more accessible location. At the

16   meeting, Defendants again denied his request that the shuttle service be restored,

17   and told him that he must navigate the paths from the parking lot areas on his own.

18   Defendants' proposed solutions failed to provide adequate accessibility for Mr.

19   Guerra.

20        63.    On August 25, 2016, Mr. Guerra, through counsel, sent a letter to

21   Defendants explaining why Defendants' proposed solutions for him were

22   inadequate and requesting that Defendants provide transportation assistance so he

23   could meaningfully access his classes and other programs and services at WLAC's

24   campus for the Fall 2016 semester.

25        64.    Defendants did not respond to the August 25, 2016 letter.

26        65.    Mr. Guerra is enrolled in three classes on the WLAC campus for the

27   Fall 2016 semester. He is committed to continuing with his education, but he

28   struggles getting around campus. Each day he goes to campus, he deals with the

1  unsafe, strenuous and painful experiences of getting to classes on his own. He fears

2  that he will suffer further physical injury on campus, and that he will be unable to

3  complete all the classes in which he has enrolled, further delaying completion of

4  his college program.

5  **Chrystal**

6  66.    Chrystal has attended WLAC since 2013, after several years of taking

7  care of her complex medical conditions and serving as the primary caregiver for

8  her mother.

9  67.    At WLAC, Chrystal is working towards a certification as an Alcohol

10  and Drug Abuse Counselor. She would like to find a job in this field after

11  completing her community college program so she can help people in her

12  community who are struggling with or working to recover from alcohol and drug

13  abuse. She hopes to work with underserved members of the community, and in

14  particular women and monolingual Spanish-speakers who are struggling with

15  alcohol and drug addiction.

16  68.    Chrystal became disabled after a serious car accident in 2005. She has

17  a number of medical conditions and disabilities that affect her ability to get around

18  on her own. In particular, she must keep an oxygen tank, attached to a wheeled

19  cart, with her to assist with breathing. She has constant and significant back and leg

20  pain, and has difficulty walking more than short distances, in particular on

21  staircases, uneven surfaces, and slopes. She cannot use a staircase that has more

22  than two or three stairs. She walks very slowly and must frequently stop to rest.

23  69.    Chrystal regularly used the WLAC Campus Shuttle to get to her

24  classes and activities on campus.

25  70.    Since Defendants terminated the Campus Shuttle, Chrystal has been

26  forced to navigate, for example, stairways and steep inclines necessary to reach the

27  Student Services building and General Classrooms building where her classes were

28  located, which is extremely strenuous and dangerous for her.

71.     Because of the campus's inaccessibility and Defendants' denial of transportation assistance, Chrystal's participation in academic and student life has been significantly restricted. She has relied heavily on the assistance of fellow students to get to around campus after the shuttle service was terminated. When her peers were not available to assist her, she has had no choice but to miss her classes and campus activities. For example, she missed class several times during the Spring 2016 semester because no one was available to assist her. She also delayed visiting campus services, including the financial aid office, until she could find help from a friend.

72.     During the Summer 2016 session, given the lack of accessibility on campus and without others available to assist her, Chrystal was limited to taking only online courses. She wants to be able to go to WLAC's courses in a classroom setting, however, and learns best through in-person classes, compared to online courses.

73.     Chrystal has tried repeatedly to get the assistance she needs to get around campus and participate fully as a WLAC student, including attending two in-person meetings with Defendants on July 18, 2016 and August 22, 2016. Defendants refused her request to have those meetings in a more accessible location on campus.

74.     Defendants expressed regret about the termination of shuttle service, but refused to provide other transportation service to Chrystal. Defendants identified the closest parking locations to the campus locations she needed to go to, but Chrystal explained that parking in these locations would still not work for her because doing so would require her to navigate long distances, steep slopes, or staircases.

75.     On August 25, 2016, Chrystal, through counsel, sent a letter to Defendants explaining why Defendants' proposed solutions for her were inadequate and requesting that Defendants provide transportation assistance so she

could meaningfully access her classes, and other programs and services, at WLAC's campus for the Fall 2016 semester.

76.     Defendants did not respond to the letter.

77.     Chrystal has persisted with her educational efforts, and enrolled in two courses for the Fall semester. But with Defendants' continued denial of transportation assistance, however, Chrystal found the prospect of the long and inaccessible routes she would have to face on her own to be too dangerous and too arduous for her. Four days before classes started, she withdrew from one of her courses, a Spanish course, and considered dropping out altogether until her friends convinced her to stay in school. She would have been able to take the Spanish course had the shuttle still been operating.

78.     Chrystal is currently getting to her remaining class and other on-campus locations by relying on the assistance of friends, when they are available. For example, after she parks her car, she can sometimes get a ride from a friend to a location closer to class and other campus services. Chrystal fears she may be unable to complete her classes, that her safety is at risk, and that she may have to further delay or abandon altogether her educational goals due to the lack of access.

**<u>Karlton Bontrager</u>**

79.     Karlton Bontrager has attended WLAC since 2014. For the past several years, he has been a part-time public library volunteer.

80.     At WLAC, Mr. Bontrager is working towards a certification as an Alcohol and Drug Abuse Counselor. He would like to find a job in this field after completing his community college program so he can help people in his community recover from alcohol and drug abuse.

81.     Mr. Bontrager had a traumatic brain injury because of a serious accident in 2002. This has resulted in a number of limitations: he has a condition that causes weakness and limited mobility on the left side of his body. He also has impaired balance, and incomplete field of vision, and problems with fatigue. He

walks with a limp and sometimes drags his left leg. Due to his disabilities, he often experiences fatigue and difficulty walking, particularly when walking up and down stairs or slopes or for long distances.

82.     Mr. Bontrager used the WLAC Campus Shuttle service regularly to get to and from his classes and other campus locations.

83.     Since Defendants terminated the Campus Shuttle, Mr. Bontrager has been forced to navigate long distances, including the steep stretch of Albert Vera Drive between the campus entrance and his classes.

84.     Without the Campus Shuttle service, it regularly takes Mr. Bontrager an exceedingly long time to get to his classes, and he has been repeatedly late to class.

85.     He has fallen trying to get around campus on his own. For example, in March 2016, after Defendants ended the Campus Shuttle service, Mr. Bontrager fell while walking up the steep Albert Vera Drive incline on campus towards his class, injuring his knees.

86.     Mr. Bontrager has attempted to resolve this situation, including attending two in-person meetings with Defendants on July 18, 2016 and August 18, 2016. Defendants have failed to provide him the transportation assistance he needs to participate as a student. In addition, Defendants denied his requests to have the in-person meetings take place in a more accessible location on campus.

87.     Mr. Bontrager's requests for transportation assistance for getting around campus have been repeatedly denied, and no safe or effective alternative to ensure meaningful access on campus has been offered. Among other things, Defendants suggested that he ask his professors for "time accommodations" to allow him to arrive or leave 15-20 minutes late or early to class. Mr. Bontrager expressed concerns about missing instructional time because the professor would start without him or keep teaching after he left class.

88.     On August 25, 2016, Mr. Bontrager, through counsel, sent a letter to

Defendants explaining why Defendants' proposed solutions for him were inadequate and requesting that Defendants provide transportation assistance so he could meaningfully access his classes, and other programs and services, at WLAC's campus for the Fall 2016 semester.

89.  Defendants did not respond to the August 25 letter.

90.  Mr. Bontrager is enrolled in one class for the Fall 2016 semester. He would have enrolled in more classes, but he was afraid that he would not be able to attend and complete the classes without transportation assistance. He is anxious about navigating the dangerous paths on campus he must travel to get to his classes.

91.  He does not know if he will be able to attend his class without any transportation assistance to help him, and fears that his participation as a WLAC student will be severely limited, if not made altogether impossible. He feels that he is risking his safety each time he goes to school.

**Other Members of WLAC's Community Have Contacted Defendants About the Termination of Shuttle Services**

92.  Plaintiffs are not the only people who have expressed grave concerns about Defendants' decision to discontinue the shuttle service and their failure to provide alternative assistance to ensure access for students and others with disabilities.

93.  In February 2016, a WLAC professor wrote to WLAC's Vice President of Administrative Services about the discontinued shuttle service, asking: "What about the transportation of faculty & staff that may have mobility issues?" She noted that the matter "require[s] immediate attention." When Defendants responded that they "must at least temporarily suspend the shuttle service," she responded forcefully:

> The issue is that we have faculty and perhaps students that need this service to move around this campus.  What should we do if a faculty member cannot walk all the way from the parking lot to a class is GC,

or MS building?
We have a current problem that demands an immediate solution.

94.     In March 2016, another WLAC professor wrote to the school's Work Environment Committee with concerns about the termination of the Campus Shuttle and the inadequacy of the (also now-terminated) golf cart service. He wrote that "I have contacted the District ADA person, and he has been totally unresponsive."  The professor made a plea for a solution that would meet the needs of WLAC's community of people with disabilities: "This is an issue that I believe can be handled internally.  Why it has not been addressed with my numerous e-mails and contacts is beyond me. . . .  What about our current and future students and staff at this college??"

**Plaintiffs' Exhaustion of Pre-Lawsuit Procedures**

95.     Plaintiffs have exhausted all applicable requirements before filing suit, including but not limited to any requirements under the California Tort Claim Act.

96.     On July 20, 2016, Plaintiffs filed tort claims with Defendants WLAC and LCCAD that satisfied the requirements of the California Tort Claim Act, and the claims were deemed denied by virtue of Defendants' failure or refusal to act within the statutory timeline.

**FIRST CLAIM FOR RELIEF**

**Title II of the Americans with Disabilities Act**
**42 U.S.C. § 12131 *et seq*.**

97.     Plaintiffs reallege and incorporate by reference the allegations above as if fully set forth here.

98.     Title II of the ADA provides in relevant part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132; *see* 28 C.F.R. §§ 35.130(a), (b)(1).

99.     Defendant WLAC has been and is a "public entity" within the meaning of Title II of the ADA. 42 U.S.C. § 12131.

100.    Defendant LACCDD has been and is a public entity and a "special purpose district" within the meaning of Title II of the ADA. 42 U.S.C. § 12131(1)(B).

101.    Plaintiffs have been and are qualified individuals with disabilities within the meaning of Title II of the ADA and meet the essential eligibility requirements for the receipt of the services, programs, or activities of Defendants. 42 U.S.C. § 12131.

102.    WLAC and all of its educational and other benefits, activities, and services are a program, service, or activity that Defendants offer within the meaning of Title II.

103.    Defendants are mandated to operate each program, service, or activity "so that, when viewed in its entirety, it is readily accessible to and useable by individuals with disabilities." 28 C.F.R. § 35.150; *see also* 28 C.F.R. § 35.149.

104.    Defendants are mandated to consider all available methods to ensure meaningful access for Plaintiffs and others with disabilities. 28 C.F.R. § 35.150(b)(1).

105.    Title II's implementing regulations list methods of achieving program access that include, but are not limited to, "acquisition of equipment" and "use of accessible rolling stock or other conveyances," 28 C.F.R. § 35.130(b)(1), which includes shuttles.

106.    Public entities, including Defendants, "shall make reasonable modifications in policies, practices or procedures when the modifications are necessary to avoid discrimination on the basis of disability . . . ." 28 C.F.R. § 35.130(b)(7).

107.    Public entities, including Defendants, "may not . . . utilize criteria or methods of administration— (i) That have the effect of excluding individuals with

disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination; or (ii) That have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the service, program, or activity with respect to individuals with disabilities; or (iii) That perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State." 28 C.F.R. § 35.130(b)(3).

108.   The regulations also require that "[i]n choosing among available methods" for ensuring adequate program access, public entities must "give priority to those methods that offer services, programs, and activities to qualified individuals with disabilities in the most integrated setting appropriate." 28 C.F.R. § 35.150(b)(1).

109.   Defendants' actions and omissions discriminate against Plaintiffs on the basis of disability in violation of the ADA. Defendants' discriminatory conduct includes, but is not limited to:

 a. Maintaining discriminatory policies and practices;

 b. Denying Plaintiffs the benefits of Defendants' services, programs, and activities at WLAC;

 c. Failing to provide Plaintiffs an opportunity to participate in or benefit from Defendants' aids, benefits, or services that is equal to that afforded others, and/or failing to provide Plaintiffs an equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

 d. Failing to provide Plaintiffs with meaningful access to Defendants' services, programs, and activities at WLAC;

 e. Failing to operate their programs, services, and activities at WLAC so that when viewed in its entirety, the programs, services, and activities are readily accessible to and usable by Plaintiffs and other individuals with disabilities;

f.  Failing to provide reasonable modifications to ensure meaningful access to Defendants' services, programs, and activities at WLAC;

g.  Using criteria or methods of administration that have the effect of subjecting Plaintiffs to discrimination on the basis of disability;

h.  Failing to prioritize methods that offer services, programs, and activities in the most integrated setting appropriate; and

110.  Regarding program access, the ADA's regulations at 28 C.F.R. § 35.150(a)(3) provide that public entities may refuse to comply with their statutory obligations if doing so would result in a fundamental alteration in the nature of the service, program, or activity or impose an undue financial or administrative burden. Any determination from the public entity, however, must be made by the head of the public entity or his or her designee after considering all resources available for use in the funding and operation of the service, program, or activity, and the determination must be accompanied by a written statement of the reasons for reaching that conclusion. On information and belief, Defendants have failed to make such a determination accompanied by the required written statement and have, therefore, failed to demonstrate that providing the access Plaintiffs seek to Defendants' programs, services, and activities at WLAC would impose an undue financial or administrative burden.

111.  In committing the acts and/or omissions above, Defendants acted intentionally and with deliberate indifference to Plaintiffs' rights.

112.  Defendants' violations of the ADA have harmed and will continue to harm Plaintiffs in the future.

113.  Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

114.  Plaintiffs are entitled to declaratory and injunctive relief, as well as reasonable attorneys' fees and costs incurred in bringing this action. Mr. Guerra also seeks and is entitled to actual and compensatory damages.

115.   Pursuant to the remedies, procedures, and rights set forth in 42 U.S.C. § 12188, Plaintiffs pray for relief as set forth below.

## SECOND CLAIM FOR RELIEF

### Section 504 of the Rehabilitation Act
### 29 U.S.C. § 794 *et seq.*

116.   Plaintiffs reallege and incorporate by reference the allegations above as if fully set forth here.

117.   Section 504 of the Rehabilitation Act of 1973 provides in relevant part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance . . . ." 29 U.S.C. § 794; *see* 34 C.F.R. §§ 104.4(b), 104.21, 104.43(a).

118.   Defendant WLAC has been and is a recipient of federal financial assistance sufficient to invoke the coverage of Section 504.

119.   Defendant LCCAD has been and is a recipient of federal financial assistance sufficient to invoke the coverage of Section 504.

120.   Plaintiffs have been and are qualified individuals with disabilities within the meaning of Section 504 and are otherwise qualified to participate in or receive benefits from Defendants' programs or activities. 29 U.S.C. § 794(b).

121.   WLAC and all of its educational and other benefits, activities, and services are a program, service, or activity that Defendants offer within the meaning of Section 504.

122.   Each Defendant is mandated to "operate its program or activity so that when each part is viewed in its entirety, it is readily accessible to handicapped persons." 34 C.F.R. § 104.22; 34 C.F.R. § 104.21.

123.   Section 504's implementing regulations provide that in complying with the program access requirements, Defendants must "give priority to those

methods that serve handicapped persons in the most integrated setting appropriate." 34 C.F.R. § 104.22(b); *see also* 34 C.F.R. § 104.43(d).

124.   In addition, Defendants may not use "criteria or methods of administration (i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap, (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program or activity with respect to handicapped persons, or (iii) that perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same State." 34 C.F.R. § 104.4(4).

125.   Defendants' actions and omissions discriminate against Plaintiffs solely by reason of their disability in violation of Section 504. Defendants' discriminatory conduct includes but is not limited to:

a.   Maintaining discriminatory policies and practices;

b.   Excluding Plaintiffs from participation in and denying Plaintiffs the benefits of Defendants' programs and activities at WLAC;

c.   Failing to provide Plaintiffs an opportunity to participate in or benefit from Defendants' aids, benefits, or services that is equal to and/or not as effective as that afforded others, and failing to provide Plaintiffs equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement in the most integrated setting appropriate to Plaintiffs' needs;

d.   Failing to provide Plaintiffs with meaningful access to Defendants' programs and activities at WLAC;

e.   Failing to operate their programs and activities at WLAC so that when viewed in its entirety, the programs and activities are readily accessible to and usable by Plaintiffs; and

f.    Failing to provide reasonable modifications to ensure meaningful

1           access to Defendants' programs and activities at WLAC;

2              g.  Using criteria or methods of administration that have the effect of

3              subjecting Plaintiffs to discrimination on the basis of disability; and

4        126.  In committing the acts and/or omissions above, Defendants acted

5  intentionally and with deliberate indifference to Plaintiffs' rights.

6        127.  Defendants' violations of Section 504 have harmed and will continue

7  to harm Plaintiffs in the future.

8        128.  Because Defendants' discriminatory conduct is ongoing, declaratory

9  and injunctive relief are appropriate remedies.

10       129.  Plaintiffs are entitled to declaratory and injunctive relief, as well as

11  reasonable attorneys' fees and costs in bringing this action. Mr. Guerra also seeks

12  and is entitled to actual and compensatory damages.

13       130.  Pursuant to the remedies, procedures, and rights set forth in 29 U.S.C.

14  § 794(a), Plaintiffs pray for relief as set forth below.

## THIRD CLAIM FOR RELIEF

### California Government Code § 11135

17       131.  Plaintiffs reallege and incorporate by reference the allegations above

18  as if fully set forth here.

19       132.  Section 11135(a) of the California Government Code provides in

20  relevant part: "No person in the State of California shall, on the basis of . . .

21  disability, be unlawfully denied the benefits of, or be unlawfully subjected to

22  discrimination under, any program or activity that is funded directly by the state or

23  receives any financial assistance from the state."

24       133.  Defendant WLAC receives financial assistance from the State of

25  California sufficient to invoke the coverage of Government Code § 11135 *et seq*.

26  WLAC has received such financial assistance at all times relevant to the claims

27  asserted in this Complaint.

28       134.  Defendant LACCD receives financial assistance from the State of

California sufficient to invoke the coverage of Government Code § 11135 *et seq*. LACCD has received such financial assistance at all times relevant to the claims asserted in this Complaint.

135.   California Government Code § 11135(b) incorporates the protections and prohibitions contained in the Americans with Disabilities Act ("ADA") and its implementing regulations. Section 11135(b) states in relevant part:

> With respect to discrimination on the basis of disability, programs and activities subject to subdivision (a) shall meet the protections and prohibitions contained in Section 202 of the federal Americans with Disabilities Act of 1990 (42 U.S.C. Sec. 12132), and the federal rules and regulations adopted in implementation thereof, except that if the laws of this state prescribe stronger protections and prohibitions, the programs and activities subject to subdivision (a) shall be subject to the stronger protections and prohibitions.

136.   For all the reasons described above, Defendants have violated and continue to violate the Americans with Disabilities Act and therefore have violated and continue to violate California Government Code § 11135(b).

137.   Pursuant to California Government Code § 11139, Plaintiffs have a private right of action to enforce California Government Code § 11135(b).

138.   Defendants and their agents and employees have and continue to violate California Government Code § 11135 by unlawfully denying Plaintiffs the benefits of, and unlawfully subjecting Plaintiffs to discrimination under, Defendants' programs and activities and for the reasons set forth above.

139.   Defendants have refused and failed to provide Plaintiffs with full and equal access to their facilities, programs, services and activities as required by California Government Code § 11135 *et seq*.

140.   Defendants' violations of California Government Code § 11135 have harmed and will continue to harm Plaintiffs.

141.   Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

142.   Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing this action.

143.   Pursuant to the rights, procedures, and remedies set forth under in California Government Code § 11135 and § 11139, and the California Code of Civil Procedure, Plaintiffs pray for relief as set forth below.

## FOURTH CLAIM FOR RELIEF

### California Education Code § 66270

144.   Plaintiffs reallege and incorporate by reference the allegations above as if fully set forth here.

145.   California Education Code § 66270 provides that "[n]o person shall be subjected to discrimination on the basis of disability . . . in any program or activity conducted by any postsecondary education institution that receives, or benefits from, state financial assistance or enrolls students who receive state student financial aid."

146.   Plaintiffs are individuals with disabilities within the meaning of the California Education Code.

147.   Defendants have received and continue to receive financial assistance from the State of California.

148.   As a result of Defendants' actions and omissions as described above, Defendants have violated California Education Code § 66270 by denying Plaintiffs the benefits of, and unlawfully subjecting Plaintiffs to discrimination on the basis of disability in, Defendants' programs or activities at WLAC.

149.   Defendants' violations of California Education Code § 66270 have harmed and will continue to harm Plaintiffs.

150.   Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

151.   Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing this action.

152.   Pursuant to the rights, procedures, and remedies under California law, Plaintiffs pray for relief as set forth below.

## FIFTH CLAIM FOR RELIEF

**Unruh Civil Rights Act**
**California Civil Code § 51 *et seq.***

153.   Plaintiffs reallege and incorporate by reference the allegations above as if fully set forth here.

154.   California Civil Code § 51(b) provides that "[A]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability [or] medical condition . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

155.   The Unruh Act also provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code § 51(f).

156.   Defendants are or operate business establishments within the jurisdiction of the State of California and within the meaning of the California Civil Code Section 51 *et seq.* ("the Unruh Act").

157.   Defendants have violated the Unruh Act by, among other things, denying, aiding, or inciting the denial of Plaintiffs' rights to the full and equal accommodations, advantages, facilities, privileges, or services offered by Defendants. Unruh Act also provides that a violation of the ADA is a violation of the Unruh Act.

158.   Defendants have also violated the Unruh Act by denying, aiding, or inciting the denial of Plaintiffs' rights to equal access under California state law and the ADA.

159.   Plaintiffs are entitled to declaratory and injunctive relief, as well as statutory damages for each incident of discrimination, and reasonable attorneys' fees and costs incurred in bringing this action. An "incident" refers, at a minimum,

1   to each time a Plaintiff visited the WLAC campus and was denied meaningful

2   access, as well as each time a Plaintiff was deterred from visiting the WLAC

3   campus due to the lack of meaningful access. Mr. Guerra also seeks, and is entitled

4   to, actual and compensatory damages.

5       160.   Pursuant to the remedies, procedures, and rights set forth in Cal. Civ.

6   Code Section 52, Plaintiffs pray for judgment as set forth below.

7   

**SIXTH CLAIM FOR RELIEF**

8   

**California Disabled Persons Act**
**California Civil Code § 54 *et seq.***
**[For Damages and Attorneys' Fees Only]**

9

10

11       161.   Plaintiffs reallege and incorporate by reference the allegations above

12   as if fully set forth here.

13       162.   The California Disabled Persons Act ("DPA") provides that

14   "[i]ndividuals with disabilities or medical conditions have the same right as the

15   general public to the full and free use of . . . public facilities[] and other public

16   places." Cal. Civ. Code § 54(a); *see also* Cal. Civ. Code § 54.1 (providing that

17   "[i]ndividuals with disabilities shall be entitled to full and equal access, as other

18   members of the general public, to accommodations, advantages, facilities . . . [and]

19   places to which the general public is invited . . . ."

20       163.   The DPA also provides that a violation of the ADA is a violation of

21   the DPA. Cal. Civ. Code §§ 54(a), 54.1(a).

22       164.   Defendants are entities covered by the DPA.

23       165.   A violation of the ADA is also a violation of the DPA. *See* Cal. Civ.

24   Code, §§ 54(c), 54.1(d).

25       166.   Defendants have violated the DPA by, among other things, denying

26   and/or interfering with Plaintiffs' rights to full and equal access to Defendants'

27   accommodations, advantages, or facilities.

28       167.   Defendants have also violated the DPA by denying or aiding the

denial of Plaintiffs' rights to equal access under California state law and the ADA.

168.   Plaintiffs are entitled to statutory damages for each incident of discrimination, and reasonable attorneys' fees and costs incurred in bringing this action. An "incident" refers, at a minimum, to each time a Plaintiff visited the WLAC campus and was denied meaningful access, as well as each time a Plaintiff was deterred from visiting the WLAC campus due to the lack of meaningful access. Mr. Guerra also seeks, and is entitled to, actual and compensatory damages.

169.   Pursuant to the remedies, procedures, and rights set forth in California law, including California Civil Code §§ 54.3(a), Plaintiffs pray for judgment as set forth below. Plaintiffs do not seek injunctive relief under California Civil Code § 55 in this action.

## SEVENTH CLAIM FOR RELIEF

### Negligence and Negligence *Per Se* under California Law
### [on behalf of Plaintiff Guerra against both Defendants]

170.   Plaintiff Guerra realleges and incorporates by reference the allegations above as if fully set forth here.

171.   At all times relevant to the Complaint, Defendants owed a duty of care to Mr. Guerra.

172.   By the acts and omissions alleged above, Defendants breached their duty of care to Mr. Guerra.

173.   By the acts and omissions alleged above, Defendants violated federal and state statutes and regulations, including but not limited to Title II of the ADA, Section 504 of the Rehabilitation Act, and related state statutes.

174.   Defendants' violations of law proximately caused and were a substantial factor in causing Mr. Guerra's damages as alleged above. Such damages were reasonably foreseeable to Defendants.

175.   Mr. Guerra's damages resulted from the kind of occurrence that the violated statutes and regulations were designed to prevent.

176. At all relevant times, Mr. Guerra belonged to the class of persons for whose protection the statutes and regulations were adopted.

177. Pursuant to the remedies, procedures, and rights set forth in California law, Mr. Guerra prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request:

1. That this Court assume jurisdiction.

2. That this Court declare that Defendants to be in violation of Title II of the ADA (42 U.S.C. § 12181 *et seq.*) and its implementing relations, Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794 *et seq.*) and its implementing regulations, California Government Code § 11135, California Education Code § 66270; and the Unruh Civil Rights Act (Cal. Civ. Code § 51 *et seq.*).

3. That this Court issue a preliminary and permanent injunction ordering Defendant to comply with the statutes set forth in this Complaint, including but not limited to ordering Defendants to:

    a. Ensure that Plaintiffs have meaningful access to their classes and any other programs, services, and activities in which they seek to participate on the WLAC campus, by providing transportation assistance, such as through a campus shuttle or similar service, to Plaintiffs, and operate that service in a manner that is accessible to Plaintiffs;

    b. In consultation with Plaintiffs, develop a plan that includes any policy changes necessary for a durable remedy. The plan shall ensure the provision of adequate transportation assistance and services such that Plaintiffs and other students with mobility-related disabilities have meaningful access to Defendants' programs, services, and activities on the WLAC campus; and

    c. Require any other steps necessary to provide meaningful access for

1    Plaintiffs to the College's programs, services, and activities.

2    4.    That this Court award each Plaintiff minimum statutory damages,

3    defined as $4,000 per incident of discrimination under the Unruh Act or $1,000 per

4    incident of discrimination under the California DPA, Defendants' violations of

5    civil rights under state law. An "incident" refers, at a minimum, to each time a

6    Plaintiff visited the WLAC campus and was denied meaningful access, as well as

7    each time a Plaintiff was deterred from visiting the WLAC campus due to the lack

8    of meaningful access.

9    5.    That this Court award Plaintiff Guerra actual and/or compensatory

10   damages violations of his civil rights under state and federal laws and tort

11   violations, including but not limited to personal injury damages, damages for

12   emotional distress, and attorneys' fees.

13   6.    That this Court award all Plaintiffs reasonable attorneys' fees and

14   costs pursuant to federal and California law.

15   7.    That this Court award all Plaintiffs such other and further relief as the

16   Court deems to be just, proper, and equitable.

17

18   **DEMAND FOR JURY TRIAL**

19   Plaintiffs demand a jury on all issues which can be heard by a jury.

20

21   Dated: September 9, 2016              Respectfully submitted,

22                                        DISABILITY RIGHTS CALIFORNIA

23                                        /s/ Srividya Panchalam

24                                        AUTUMN M. ELLIOTT
                                          autumn.elliott@disabilityrightsca.org
25                                        SRIVIDYA PANCHALAM
                                          sri.panchalam@disabilityrightsca.org
26                                        DISABILITY RIGHTS CALIFORNIA
                                          350 South Bixel Street, Suite 290
27                                        Los Angeles, CA  90017
                                          Telephone: (213) 213-8000
28

1

Fax: (213) 213-8001

2

/s/ Julie Wilensky

3

AARON J. FISCHER

4

aaron.fischer@disabilityrightsca.org

5

JULIE WILENSKY
julie.wilensky@disabilityrightsca.org

6

DISABILITY RIGHTS CALIFORNIA

7

1330 Broadway, Suite 500
Oakland, CA  94612

8

Telephone: (510) 267-1200
Fax: (510) 267-1201

9

*Attorneys for Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28